United States District Court

For the Northern District of California

1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                   NORTHERN DISTRICT OF CALIFORNIA

8

9  LEE KEMP, individually and on behalf of all          No. C-09-4683 MHP
   others similarly situated, the general public,
   and as an "aggrieved employee" under the
10 California Labor Code Private Attorney              **MEMORANDUM & ORDER**
   General Act,
11                                                     **Re: Defendant's Motion to Dismiss and, in
                                                       the Alternative, to Strike**
12                        Plaintiff,

13     v.

14 INTERNATIONAL BUSINESS MACHINES
   CORP., a New York corporation, and DOES 1-
15 50, inclusive,

16                        Defendant(s),
                                                    /
17

18         Plaintiff Lee Kemp brought this action challenging defendant International Business

19 Machines' ("IBM") employee record-keeping practices as well as the reduction of Kemp's earned

20 commissions pursuant to IBM's Incentive Plan.  Now before the court is IBM's motion to dismiss

21 the First Amended Complaint ("FAC") and, in the alternative, to strike Kemp's request for civil

22 penalties under Cal. Labor Code § 2699(f).  Having considered the arguments of the parties and for

23 the reasons stated below, the court enters the following memorandum and order.

24 BACKGROUND

25         Kemp was employed as a Data Servers Sales Specialist with IBM from 2007 to 2009.

26 Docket No. 37 (Opp.) at 1.  Prior to the start of his employment, IBM gave Kemp an "offer letter"

27 stating that he would receive an annual base salary of $100,046 plus a target incentive of $82,954.

28 Docket No. 37-1 (Thierman Decl.) Exh. A.  The offer letter stated that "IBM's incentive plan is

United States District Court

For the Northern District of California

1    designed to drive results focusing on growth and market share. Over-achievement of our incentive

2    objectives can result in significant upside earnings." *Id.*

3        On or about January 2008, IBM's Field Management System indicated that Kemp was due

4    commissions on achieved sales of $3,009,952. Docket No. 13 (FAC) ¶ 8. On or about June 2008, at

5    the end of his six month Incentive Plan period, Kemp's commission statement listed an achieved

6    sales amount of $1,222,137. *Id.* ¶ 10. On or about December 2008, the Field Management System

7    indicated that Kemp was due commissions on achieved sales of $4,879,179, but at the end of the

8    Incentive Plan period later that month, Kemp's commission statement listed an achieved sales

9    amount of $4,760,570. *Id.* ¶¶ 12-13.

10        IBM's applicable Incentive Plan contained a "Right to Modify or Cancel" provision, which

11    states in relevant part:

12        The Plan does not constitute an express or implied contract or a promise by IBM to make any
          distributions under it. IBM reserves the right to adjust the Plan terms (including but not

13        limited to any quotas or similar performance objectives, or to target incentives or similar
          earnings opportunities) or to cancel the Plan, for any individual or group of individuals, at

14        any time during the Plan period up until any related payments have been earned under the
          Plan terms.

15

16    Docket No. 34 (Carroll Decl.) Exh. A. The Incentive Plan also indicates that "your incentive

17    payments . . . are earned and are no longer considered advance payments at the end of the full-Plan

18    period and after the measurement of complete business results . . . ." *Id.* "[F]or semiannual Plans

19    the full-Plan period ends on the last day of month six (June for the first half of the year and

20    December for the second half of the year)." *Id.* Lastly, the Incentive Plan provides:

21        Any information regarding Plan-to-Date achievement that may be made available to you
          before the completion of the full-Plan period is provided for information purposes only, and

22        does not constitute a promise by IBM to make any specific distributions to you or to any
          other employee.

23    *Id.*

24        On or about June 17, 2009, Kemp filed a class action complaint in San Francisco County

25    Superior Court, alleging record-keeping violations under Cal. Labor Code §§ 1174.5 (Count 1), 1199

26    (Count 2) & 2699 (Count 3) on behalf of all current and former IBM employees who had been

27    subject to such unlawful practices within the previous year. Docket No. 1. He also asserted one

28

United States District Court

For the Northern District of California

1  claim solely on his own behalf under Cal. Labor Code. § 221 (Count 4) for unlawful collection of

2  already-paid wages. *Id.* IBM removed to federal court under 28 U.S.C. § 1446 and filed a motion to

3  dismiss and, in the alternative, to strike allegations seeking civil penalties under Cal. Labor Code §

4  2699(f). Docket No. 5. Kemp filed the FAC on September 15, 2009, adding a fifth claim under Cal.

5  Labor Code § 2802(a) for IBM's failure to reimburse him for costs incurred during his employment.

6  Docket No. 13. After a period of private ADR, on September 1, 2010 IBM filed the instant motion

7  to dismiss and, in the alternative, to strike allegations regarding section 2699(f).[1]

8

9  LEGAL STANDARD

10       Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a

11  defendant for failure to state a claim upon which relief can be granted against that defendant. A

12  motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250

13  F.3d 729, 732 (9th Cir. 2001). Dismissal may be based on the lack of a cognizable legal theory or

14  the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police*

15  *Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). A motion to dismiss should be granted if a plaintiff fails to

16  plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

17  550 U.S. 544, 569 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it

18  asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, ---

19  U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556). Plaintiff must plead

20  "factual content that allows the court to draw the reasonable inference that the defendant is liable for

21  the misconduct alleged." *Id.*

22       Allegations of material fact are taken as true and construed in the light most favorable to the

23  non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court

24  need not, however, accept as true pleadings that are no more than legal conclusions or the "formulaic

25  recitation of the elements" of a cause of action. *Iqbal*, 129 S.Ct. at 1950; *see also Sprewell v. Golden*

26  *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Clegg v. Cult Awareness Network*, 18 F.3d 752,

27  754-55 (9th Cir. 1994). "Determining whether a complaint states a plausible claim for relief ... [is] a

28

3

1    context-specific task that requires the reviewing court to draw on its judicial experience and common

2    sense." *Iqbal*, 129 S.Ct. at 1950.

3    DISCUSSION

4    I.       Counts 1-3

5           Counts 1-3 of the FAC allege violations of record-keeping laws under Cal. Labor Code §§

6    1174.5 & 1199 and Industrial Wage Order 4-2001 § 7. IBM argues that the claims must be

7    dismissed because Kemp has failed to adequately allege (1) that he has exhausted the procedural

8    requirements of the Private Attorney General Act of 2004 ("PAGA"), Cal. Labor Code § 2699.3., (2)

9    that IBM failed to comply with any of the relevant record-keeping requirements, and (3) that he is a

10   non-exempt employee subject to the relevant record-keeping requirements.[2] The court agrees with

11   IBM as to each point.

12          PAGA permits "an aggrieved employee to initiate a private civil action on behalf of himself

13   or herself and other current or former employees to recover civil penalties if the Labor and

14   Workforce Development Agency ("LWDA") does not do so." *Caliber Bodyworks, Inc. v. Superior*

15   *Ct.*, 134 Cal. App. 4th 365, 370 (2005); *see* Cal. Labor Code § 2699(a). For violations of any Labor

16   Code provisions listed in section 2699.5, however, employees may not file an action without first

17   complying with PAGA's administrative requirements, set forth in section 2699.3. *See Caliber*, 134

18   Cal. App. 4th at 370. Section 2699.3 provides that such "aggrieved employee[s]" must (1) "give

19   written notice by certified mail to the [LWDA] and the employer of the specific provisions of this

20   code alleged to have been violated, including the facts and theories to support the alleged violation,"

21   and (2) wait until receipt of notice from the LWDA that it will not investigate the grievance, or 33

22   calendar days, whichever is shorter. The Labor Code violations alleged by Kemp (sections 1174 and

23   1199) are listed in section 2699.5 and therefore are subject to PAGA's administrative requirements.

24          Kemp has insufficiently pled compliance with PAGA's administrative requirements.

25   Paragraph 35 of the FAC constitutes Kemp's sole allegation regarding PAGA exhaustion: "Plaintiff

26   has met all the notice requirements set forth in California Labor Code § 2699.3 necessary to

27   commence a civil action." FAC ¶ 35. This blanket assertion of compliance with section 2699.3 is

28

4

United States District Court
For the Northern District of California

insufficient to establish Kemp's entitlement to challenge IBM's record-keeping practices, because it does not set forth allegations that would allow the court to independently conclude that Kemp has satisfied the requirements of the statute as a matter of law.  For instance, the FAC makes no mention of (1) when Kemp notified the LWDA about the record-keeping violations, (2) what, if any, response he received from the LWDA, or (3) how long he waited before commencing this action.  A plaintiff cannot overcome his or her burden on a motion to dismiss merely by asserting a legal conclusion regarding necessary aspects of his or her claim.  *See Iqbal*, 129 S.Ct. at 1950.

Kemp's allegations regarding the merits of his record-keeping claims are similarly insufficient.  Cal. Labor Code § 1174(d) requires employers, in relevant part, to:

> Keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. These records shall be kept in accordance with rules established for this purpose by the commission, but in any case shall be kept on file for not less than two years.

Industrial Wage Commission Order 4-2001 § 7 in turn provides:

> (A) Every employer shall keep accurate information with respect to each employee . . .
> (C) All required records . . . shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California. An employees records shall be available for inspection by the employee upon reasonable request.

Cal. Labor Code § 1199 prohibits employers from violating or refusing or neglecting to "comply with . . . any order of the [Industrial Wage Commission]."

Aside from baldly asserting that IBM willfully refuses to keep employee records at the employment site or at a central location, *see* FAC ¶¶ 24, 30, Kemp's sole factual allegation in support his record-keeping claims is:

> Plaintiff has been unable to obtain payroll records from any central location in California or from the establishment at which he is employed showing his total hours worked daily and all wages paid.  Upon information and belief, no such centralized records exist in the state of California.

FAC ¶ 4. Such an allegation does not demonstrate beyond a highly speculative level that IBM may actually be engaged in unlawful record-keeping practices.  It may be true that information regarding IBM's record-keeping is uniquely within IBM's control, but Kemp must nonetheless provide some

5

United States District Court

For the Northern District of California

1  reasonable basis for concluding that IBM is not in conformity with the Labor Code. For example,

2  Kemp does not allege that he ever requested employment records from IBM or that he undertook any

3  good faith investigation into the existence of those records. Kemp cannot "unlock the doors of

4  discovery" regarding IBM's record-keeping without providing some specific facts that would assure

5  the court that there is some plausible basis for liability. *Iqbal*, 129 S. Ct. at 1950.

6      Lastly, Counts 1-3 must also be dismissed due to Kemp's failure to allege that he is a non-

7  exempt employee and therefore subject to the record-keeping requirements at issue here. *See* Labor

8  Code § 1171 ("The provisions of this chapter . . . shall not include any individual employed as an

9  outside salesman "); Wage Order 4-2001 § 1(A)(noting that record-keeping requirements do not

10  apply to certain exempt administrative, professional or executive employees); *Id.* § 1(C)(noting that

11  no provision of the Wage Order applies to outside salespersons). Although the ultimate burden of

12  proving that an exemption applies rests with defendant, *see Ramirez v. Yosemite Water Co.*, 20 Cal.

13  4th 785, 794-95 (1999), without some allegation regarding the non-exempt nature of his

14  employment, the court again is unable to draw the "reasonable inference" that IBM is liable for

15  failure to keep records regarding Kemp's employment. Particularly here, where Kemp brings his

16  claims on behalf of similarly-situated employees, it is important for the court to be reasonably

17  assuaged that the record-keeping requirements apply to Kemp and that he would be an adequate

18  representative of the class he seeks to certify.

19      For the foregoing reasons, Counts 1-3 of the FAC are dismissed. Any further amended

20  complaint must set forth specific facts that would give rise to some plausible claim for relief under

21  California's Labor Code.

22  II.    Counts 4 and 5

23      Kemp alleges that IBM unlawfully reduced the amount of sales for which he qualified for

24  commission under IBM's Incentive Plan. By stating in January 2008 that Kemp was due

25  commissions on achieved sales of $3,009,952 and then reducing those achieved sales to $1,222,137,

26  Kemp alleges that IBM illegally collected back wages earned and promised to him. He alleges a

27  similar collection back of his commissions during December 2008.

28

6

1    Under Cal. Labor Code § 221, it is "unlawful for any employer to collect and receive from an

2    employee any part of wages theretofore paid by said employer to said employee." "[A]n employee's

3    'wages' or 'earnings' are the amount the employer has offered or promised to pay, or has paid

4    pursuant to such an offer or promise, as compensation for that employee's labor." *Prachasaisoradej*

5    *v. Ralphs Grocery Co.*, 42 Cal. 4th 217, 228 (2007) (emphases omitted).  Commission payments can

6    qualify as wages for purposes of section 221.  *See Koehl v. Verio, Inc.*, 142 Cal. App. 4th 1313, 1329

7    (2006) (collecting cases).  However, "[t]he right of a salesperson or any other person to a

8    commission depends on the terms of the contract for compensation." *Id.* at 1330; *see also*

9    *Prachasaisoradej*, 42 Cal. 4th at 229 ("Employees' expectations with respect to these supplementary

10   payments . . . derived exclusively from the terms of the Plan itself."); *Steinhebel v. Los Angeles*

11   *Times Commc'ns, LLC*, 126 Cal. App. 4th 696, 705 (2005) ("[C]ontractual terms must be met before

12   an employee is entitled to a commission.").

13   There are two reasons why the FAC fails to state a claim for a violation of § 221.  First, the

14   Incentive Plan expressly specifies that it "does not constitute an express or implied contract or a

15   promise by IBM to make any distributions under it."  Several courts have addressed identical or

16   extremely similar language in IBM's Incentive Plan and have concluded that the Incentive Plan is not

17   an enforceable contract. *See, e.g., Jensen v. Int'l Bus. Machs. Corp.*, 454 F.3d 382, 388 (4th Cir.

18   2006) ("The terms of IBM's Sales Incentive Plan make clear that they are not to be construed as an

19   offer that can be accepted to form a contract."); *Schwarzkopf v. Int'l Bus. Machs., Inc.*, No. C 08-

20   2715 JF, 2010 WL 1929625, at *8-9 (N.D. Cal. May 12, 2010) (Fogel, J.) ("Any inference that may

21   be drawn in Schwarzkopf's favor . . . are insufficient to negate IBM's clear intent *not* to contract . . .

22   )(emphasis in original); *Gilmour v. Int'l Bus. Machs. Corp.*, Docket No. 24 Exh. 1, No. CV 09-4155

23   SJO (C.D. Cal. Dec. 16, 2009) ("[T]he Incentive Plan and Quota Letter did not create an enforceable

24   employment contract.") (collecting cases).

25   Second, under the terms of the Incentive Plan itself, Kemp did not "earn" commissions based

26   on the $3,009,952 in achieved sales indicated in the Field Management System in January 2008 or

27   the $4,879,179 indicated in December 2008.  The Incentive Plan expressly states that commissions

28

United States District Court

For the Northern District of California

are not "earned" until the end of the full-Plan period and that any interim information regarding Plan-to-Date achievement is solely for informational purposes and does not constitute a promise by IBM to pay any particular amount.  The FAC expressly acknowledges that the Incentive Plan period ran from January 2008 through June 2008, and that he was credited with approximately $3 million in sales in January 2008, at the *beginning* of the applicable Incentive Plan period.  Even if the Incentive Plan were enforceable, Kemp did not become entitled to any commissions until the end of June 2008, after IBM had measured its complete business results.

Kemp tries to distinguish the above-cited cases on the ground that he "is not alleging that the Plan constituted an enforceable contract."  Opp. at 14.  As mentioned, above, however, his section 221 claim requires some showing that he is contractually entitled to the commissions he claims to have been denied.   Kemp also argues that IBM's actions here constituted retroactive amendment of the dollar amount of sales after he had earned the commissions on those sales.  *Id.*  This argument, however, presupposes that Kemp had actually "earned" commissions under the Incentive Plan.  Based upon the allegations in Paragraphs 7-14 of the FAC, the Incentive Plan appears to foreclose this conclusion.

Accordingly, Count 4 of the FAC is dismissed.  Any further amended complaint must contain allegations plausibly demonstrating that Kemp was entitled to commissions above and beyond the amount he received.

Count 5 of the FAC seeks reimbursement under § 2802(a)for expenditures or losses incurred while acting as an IBM employee.  Kemp does not allege any costs that he incurred that were not fully reimbursed by IBM, and merely realleges that IBM unlawfully and willfully collected and received back earned commissions.  Count 5 therefore is also dismissed.


CONCLUSION

For the foregoing reasons, IBM's motion to dismiss is granted, without prejudice.  Kemp may file a Second Amended Complaint ("SAC") consistent with this order within thirty (30) days of the

8

United States District Court

For the Northern District of California

1  filing of this order.  IBM shall file its answer or otherwise respond within thirty (30) days of the

2  filing of the SAC

3          IT IS SO ORDERED.

4

5  Dated: Nov. 4, 2010

6                                                    MARILYN HALL PATEL
                                                     United States District Court Judge
7                                                    Northern District of California

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9

### ENDNOTES

1. Because the court dismisses Kemp's unlawful record-keeping claims, it need not address IBM's alternative motion to strike Kemp's request for civil penalties under § 2699(f). *See* Docket 33 (Mot.) at 16 ("If the Court dismisses the Recordkeeping Counts (Counts 1-3) . . . it need not consider Defendant's Motion to Strike).

2. IBM also contends that Counts 1 and 2 should be dismissed because there is no private right of action under Labor Code sections 1174 and 1199, and all employee claims under these provisions must be made derivatively through PAGA. This argument is entirely academic at this juncture. Kemp does not dispute that PAGA's administrative requirements apply to Counts 1 and 2, and for the reasons set forth in this memorandum, the FAC fails to adequately allege compliance with PAGA.

United States District Court

For the Northern District of California